BILL LOCKYER Attorney General ANTHONY S. Da VIGO Deputy Attorney General
THE HONORABLE HELEN THOMSON, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following question:
May a corporation charge an annual subscription fee, including a reasonable profit, for furnishing a list of physicians willing to provide medical services at discounted rates to uninsured indigent persons?
 CONCLUSION
A corporation may not charge an annual subscription fee, including a reasonable profit, for furnishing a list of physicians willing to provide medical services at discounted rates to uninsured indigent persons.
 ANALYSIS
It is proposed that a corporation will be formed that would maintain and furnish for a fee a roster of physicians willing to provide medical services to uninsured indigent persons at discounted rates. No fees would be paid by the physicians for being registered. However, the prospective patients would pay an annual subscription fee, included in which would be a reasonable profit, to the corporation for the list. The roster would be informational and nonexclusive, there being no obligation by the uninsured indigents to select from the list. The corporation would not give any advice concerning when or specifically from whom to seek services and would not participate in the economic relationship between the listed physicians and the uninsured indigents by way of billing, collection, payment, or otherwise. The roster would list a physician's name, practice location, telephone number, languages spoken, and any self-designated specialty, as well as instructions on how to check with the California Medical Board concerning a physician's license status. We conclude that the corporation may not charge a fee, including a profit, for furnishing the roster.
Health and Safety Code section 445[1] provides in relevant part:
 "No person, firm, partnership, association or corporation, or agent or employee thereof, shall for profit refer or recommend a person to a physician, hospital, health-related facility, or dispensary for any form of medical care or treatment of any ailment or physical condition. The imposition of a fee or charge for any such referral or recommendation creates a presumption that the referral or recommendation is for profit."[2]
The phrase "refer or recommend a person to a physician" requires our analysis in light of the proposed circumstances. In construing these words, we may apply well established principles of statutory interpretation. "When construing a statute, we must `ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.]" (Wilcox v. Birtwhistle (1999) 21 Cal.4th 973, 977.) The statutory language itself is the most reliable indicator of the Legislature's purposes. (Freedom Newspapers, Inc. v. Orange County Employees Retirement System (1993) 6 Cal.4th 821, 826.) Every word, phrase, and sentence in a statute should, if possible, be accorded significance. (Penasquitos, Inc. v. Superior Court (1991) 53 Cal.3d 1180,1186.) Also, each word is to be given its usual and ordinary meaning. (DaFonte v. Up-Right, Inc. (1992) 2 Cal.4th 593, 601.) We choose "the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." (People v. Jenkins (1995) 10 Cal.4th 234, 246.) "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citation.]" (Dyna-Med, Inc. v. Fair Employment 
Housing Com. (1987) 43 Cal.3d 1379, 1387.) Finally, a statute is to be construed in the context of the entire statutory system of which it is a part, in order to achieve harmony among the parts. (People v. Hull (1991)1 Cal.4th 266, 272.)
In several opinions dealing with the prohibition against referrals for compensation contained in Business and Professions Code section650, a statute related to section 445
and directed at licensed health care professionals, we have interpreted the term "refer" to mean "to send or direct for treatment."[3] In 65 Ops.Cal.Atty.Gen. 252 (1982), we considered a proposal in which a roster of dentists would be maintained from which persons would be told which dentists were located in their area. We stated:
 "The referral plan about which inquiry is made fits squarely within the section's broad prohibition. The verb `refer' is defined as `to send or direct for treatment, aid, information, decision' (Webster's Third New Internat. Dict. (1971 ed.) at p. 1907, def. (2a)) and a `referral' as `the process of directing . . . a patient . . . to an appropriate specialist or agency for definitive treatment' (id., at p. 1908, def. (1b)). The phrase `referral of patients' used in section 650
may thus be thought of as the process whereby a third party independent entity who initially has contact with a person in need of health care first selects a professional to render the same and then in turn places the prospective patient in contact with that professional for the receipt of treatment. In other words it is the selection of a dentist to provide professional services for a patient by someone other than the patient or dentist (or their employees or agents on their behalf) that constitutes the `referring of patients' under section 650." (Id. at p. 254.)
In 77 Ops.Cal.Atty.Gen. 143 (1994), we considered a proposal in which a roster of podiatrists would be maintained with persons directed to podiatrists in their area. We stated:
 "We find no legal significance in the fact that the caller would be able to request an alternative referral. While the caller could thereby `select' a podiatrist from among two, or even perhaps more than two, who have paid the prescribed rate for the privilege, it is still the referral agency that would make the initial selection and referral, rendering the language of section 650
applicable. We believe that even if the caller could request and receive the referral agency's entire list of professionals willing to pay its price, the referral would nevertheless be predicated upon considerations other than the best interests of the prospective patient." (Id. at p. 146.)
Most recently, in 82 Ops.Cal.Atty.Gen. 1, supra, we considered a proposal involving a directory of physicians, plastic surgeons, dermatologists, ophthalmologists, and other licensed health care providers willing to perform cosmetic surgery procedures at discounted rates. We stated:
 "We reject the suggestion that section 650 would be inapplicable here because the proposal would allow the enrollee to select from a list of physicians and other licensed health care providers. We have previously expressed the view that `. . . even if the [enrollee] could request and receive the referral agency's entire list of professionals willing to [provide services at a discount], the referral would nevertheless be predicated upon considerations other than the best interests of the prospective patient.' (77 Ops.Cal.Atty.Gen., supra, at 146.)" (Id. at p. 4.)
We have examined in detail the legislative history of section445. (Stats. 1974, ch. 1333, § 1; Stats. 1973, ch. 923, § 1.) Nothing therein would indicate that the phrase "refer or recommend a person to a physician" would have a meaning different from our construction of similar language contained in Business and Professions Code section 650 Here, even though the uninsured indigent would make the final selection of a physician from the roster provided, nevertheless such physician would be initially selected by the corporation maintaining and furnishing the roster. Furnishing the roster would, in effect, constitute recommending each physician listed. Any other construction of section 445 would serve to defeat the Legislature's evident purpose of eliminating a profit motive whenever a referral is made.
The proposed list would not be presented as a negative recommendation or even as a random sample of physicians. Rather, the roster would be purchased by the subscriber for the purpose of identifying one or more physicians willing to provide medical services at a discount. We perceive no basis for the notion that furnishing for a fee a list of physicians based exclusively on their willingness to charge discounted rates to uninsured indigents is something other than a referral proscribed by section 445.
It is concluded that a corporation may not charge an annual subscription fee, including a reasonable profit, for furnishing a list of physicians willing to provide medical services at discounted rates to uninsured indigent persons.
[1] All references hereafter to the Health and Safety Code are by section number only.
[2] We are not concerned here with federal law respecting receipt of remuneration in exchange for a referral for services paid in whole or in part under a federal or state healthcare program. (42 U.S.C. § 1320a-7b(b).)
[3] Because of the conclusion reached herein, we need not consider the possible application of Business and Professions Code section650 to the proposed circumstances. (See People v. Duz-Mor Diagnostic Laboratory, Inc. (1998) 68 Cal.App.4th 654, 664; 82 Ops.Cal.Atty.Gen. 1, 3-5 (1999).)